IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHELLEY FOX, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 15 C 8543 |
| v. | ) ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) Magistrate Judge ) Maria Valdez ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Shelley Fox's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 18] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 26] is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

In November 2012, Plaintiff filed claims for both DIB and SSI, alleging disability since June 4, 2011. (R. 204, 210.) The claims were denied initially and upon reconsideration, after which she timely requested a hearing before an

---

[1] Nancy A. Berryhill is substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

Administrative Law Judge ("ALJ"), which was held on May 7, 2014 (R. 35-61.) Plaintiff personally appeared and testified at the hearing and was represented by counsel. (*Id.*) Vocational expert Glee Ann Kehr also testified. (*Id.*)

On May 30, 2014, the ALJ denied Plaintiff's claims for both DIB and SSI finding her not disabled under the Social Security Act. (R. 19-29.) The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND[2]

### A. Background

Plaintiff was born on April 2, 1969 and was forty-five years old at the time of the May 2014 hearing. (R. 40, 204.) She completed high school and two years of college. (R. 233.) She has worked as an administrative assistant, a caterer, a support manager, and as a payroll assistant in human resources. (*Id.*) She has never been married, has no children, and has been living with her parents since 2012. (R. 40.)

### B. Medical Evidence

#### 1. Treating Sources

Plaintiff had a neurological consultation with Nin Sun, M.D., Ph.D., on May 29, 2007, where she was assessed with left optic neuritis, and a history of multiple sclerosis ("MS"). (R. 345.) Her primary care physician, Uma Taparia, M.D.,

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

2

indicated in a progress note dated October 10, 2007, that Plaintiff was taking Rebif
(Interferon beta-1a)[3] every other day for MS. (R. 340.)

On April 5, 2010, Plaintiff began seeing neurologist Mathew McCoyd, M.D.,
who noted Plaintiff had a history of MS with two clinical events in 1990 and 2007.
(R. 352-53.) Dr. McCloyd reviewed Plaintiff's last MRI from May 30, 2007 which
revealed at least six large periventricular white matter lesions consistent with a
history of MS. (R. 354-55.) Dr. McCoyd indicated that Plaintiff tolerated treatment
well without side effects and had excellent medication compliance. (R. 353.) Plaintiff
denied any clinical events since 2007 and denied double vision, blurred vision, gait
imbalance, focal weakness or numbness and reported no psychiatric issues. (*Id.*)

Plaintiff next saw Dr. McCoyd on March 29, 2012, where he indicated that
Plaintiff was doing well clinically, tolerating medication with no side effects, and
had no new focal symptoms. (R. 357.) At the next annual visit on April 15, 2013,
however, Dr. McCoyd reported that Plaintiff complained of worsening generalized
symptoms, a squeezing sensation in her legs, numbness in her arms for several
months, hand numbness, legs stiffening when driving, and poor sleep. (R. 399.) The
neurological exam revealed a mild attention tremor on the left with finger-to-nose
testing, mild sway, and an inability to tandem walk. (R. 399-400.) Dr. McCoyd noted
that the outside MRI, as compared to the 2007 MRI results, now showed at least
one new brainstem lesion (right lateral pons near the middle cerebellar peduncle)

---

[3] Rebif (Interferon beta-1a) is an approved treatment for "relapsing forms of MS to decrease
the frequency of clinical exacerbations and delay the accumulation of physical disability."
http://www.nationalmssociety.org/Treating-MS/Medications/Rebif (last visited February 8,
2017).

3

and a new right periventricular lesion that was prominent. (R. 400.) Dr. McCoyd indicated that Plaintiff had clinically worsened since last seen and that he did not think Plaintiff could work full time due to her MS. (*Id.*)

On May 2, 2013, Dr. McCoyd opined that Plaintiff met or equaled Listing 11.09 for MS with significant and persistent disorganization of motor function in two extremities, and a visual or mental impairment. (R. 383-86.) Dr. McCoyd concluded that Plaintiff had confirmed MS with a high radiographic disease burden and neurological symptoms (both diffuse and focal) consistent with the diagnosis. (R. 384.) To support his determination, Dr. McCoyd referred to an abnormal MRI with characteristic brain lesions. (R. 386.)

Dr. McCoyd further concluded that Plaintiff could occasionally lift a maximum of six to ten pounds, frequently lift up to five pounds, walk less than two hours in an eight hour day, and sit less than four hours in an eight hour workday. (R. 385.) He noted non-exertional limitations that included never climbing ladders, ropes, or scaffolds and never balancing or crouching. (*Id.*) Dr. McCoyd indicated that Plaintiff could perform the remaining postural activities "occasionally." (*Id.*) Dr. McCoyd wrote that Plaintiff had significant visual or communicative limitations due to optic neuritis, could not work in higher heat or humidity and had mild cognitive impairment due to MS. (*Id.*) He concluded that Plaintiff had not been able to work full time at any time from June 4, 2011 through the present. (*Id.*)

### *2. Consulting Sources*

On February 13, 2013, Mahesh Shah, M.D. performed an internal medicine consultative evaluation. (R. 363-66.) Plaintiff complained of numbness and tingling in her legs for five years, fatigue, and fluctuating symptoms of the right eye including blurred vision. (R. 363.) Physical examination revealed a full range of motion in all joints, a normal gait without assistive devices, and the ability to move around the office without difficulty. (*Id.*) Dr. Shah's clinical impression was that Plaintiff had MS and was doing fairly well on Rebif. (R. 366.) He opined that Plaintiff had never been very symptomatic and had vague symptoms like tingling, numbness, fatigue, and blurry vision in the right eye. (*Id.*)

On February 21, 2013, state agency medical consultant Charles Wabner, M.D., determined that Plaintiff's MS was severe but did not meet listing 11.09. (R. 66, 70.) Dr. Wabner concluded that Plaintiff had the residual functional capacity for light work, with consistent postural and environmental limitations. (R.66-68.) This opinion was affirmed upon reconsideration on September 27, 2013 by Young-Ja Kim, M.D. (R. 90-92.) On reconsideration, Howard Tin, Psy.D. additionally opined that Plaintiff had an affective disorder that was severe but did not meet listing 12.04. (R. 88-89.)

Herman P. Langner, M.D. conducted a psychiatric evaluation for the Bureau of Disability Determination Services on September 18, 2012. (R. 406.) Dr. Langner diagnosed Plaintiff with a dysthymic disorder and concluded that Plaintiff was able to handle her own funding. (*Id.*) The mental status examination revealed Plaintiff's

affect was appropriate and that she was cooperative with no auditory or visual hallucinations and no suicidal or homicidal ideations. (R. 405.) Dr. Langer indicated that Plaintiff did not have a full fund of knowledge, yet knew simple calculations and had adequate insight and judgment. (R. 405-06.)

### C. **Plaintiff's Testimony**

Plaintiff testified that she completed two years of college, and that she started a new job at a grocery store about twenty hours per week at the time of the hearing. (R. 40.) She indicated that she becomes exhausted after two hours of a four hour shift, and that she cannot work a longer shift due to fatigue. (R. 40, 46.) She testified that she currently works in a cooler cutting fruit and that her arms become numb and cramp up when she raises them for fifteen or twenty minutes (R. 51.) She asserted that when her arms become numb, she needs to walk down the aisle in the back to recover, which her employer allows her to do. (*Id.*)

She stated that she stopped working as a manager of a stocking crew in 2011 because of fatigue and because of the heavy lifting. (R. 42.) She asserted that she cannot hold a full-time job because of fatigue, and that she must lie down several hours per day due to fatigue which she has been experiencing for the past couple of years. (R. 45.) Plaintiff testified that she is taking oral medications because she does not like injections. (R. 48-49.) She indicated that she was prescribed Wellbutrin for depression but she did not fill the prescription because she has no insurance. (R. 50, 54-55). She reported that her depression leaves her with "no ambition, no nothing . . . shut down." (R. 50.) She asserted that she is able to drive but does not drive much

6

due to fatigue. (R. 52.) Further, she testified that, when her balance is bad, she trips over her own feet but does not fall. (R. 55.)

> D. **Vocational Expert Testimony**

The ALJ asked Vocational Expert ("VE") Glee Ann Kehr to consider a hypothetical person of the same age, education, and work experience as Plaintiff, with a residual functional capacity ("RFC") limiting her to work at the light exertional level who could occasionally climb ramps and stairs but could not climb ladders, ropes or scaffolds; could occasionally balance; must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery; must avoid concentrated exposure to extreme heat; and could understand, remember; and carry out simple, routine, repetitive tasks. (R. 56-57.) The VE said that such a person could not perform Plaintiff's past work, but other jobs would be available, including office helper, information clerk and mailroom clerk. (R. 57.)

The ALJ then further limited the hypothetical person to work at the sedentary range of exertion with the same additional limitations previously noted. (R. 58-59.) The VE said that such a person could perform the work of an address clerk, account clerk or order clerk. (R. 59.) When the ALJ additionally limited the hypothetical individual to being able to handle and finger no more than fifty percent of the work day, the VE testified that would eliminate all jobs. (R. 59-60.) Similarly, the VE testified that being off task more than fifteen percent of the work day or missing more than one work day per month would preclude all full-time employment. (R. 60.)

### E. ALJ Decision

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 4, 2011. (R. 21.) At step two, the ALJ concluded that Plaintiff had severe impairments of multiple sclerosis and depression. (*Id.*) The ALJ indicated at step three that the impairments, alone or in combination, did not meet or medically equal a Listing. (*Id.*) The ALJ then determined that Plaintiff retained the RFC to perform light work with the following limitations: can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds; can occasionally balance; must avoid concentrated exposure to hazards, such as unprotected heights and dangerous moving machinery; must avoid concentrated exposure to heat; and can understand, remember, and carry out simple routine repetitive tasks. (R. 23.) The ALJ concluded at step four that Plaintiff could not perform her past relevant work. (R. 27.) At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. (R. 28-29.)

To support her RFC determination, the ALJ summarized Plaintiff's symptoms as reported by Plaintiff to various medical professionals and also as she described them at the hearing. (R. 24-27.) The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the

8

alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 26.)

The ALJ also summarized the opinions of various doctors who examined Plaintiff or reviewed the medical record. (R. 24-27.) The ALJ did not give "controlling or even significant weight" to the opinions of treating neurologist, Dr. McCoyd, because the opinions were "inconsistent with his own treatment notes." (R. 27.) By contrast, "[g]reater weight" was accorded to the opinions of state agency medical consultants, Drs. Wabner and Kim, regarding physical limitations because they were "consistent with the evidence of record as a whole." (*Id.*) "Minimal weight" was given to the opinion of state agency psychological consultant, Dr. Tin, on reconsideration because it was "internally inconsistent, noting a severe affective disorder, and noting no subsequent limitations from the severe disorder." (*Id.*)

## **DISCUSSION**

### I.  ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments

enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d

at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698

11

(7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

III. **ANALYSIS**

Plaintiff argues that the ALJ's decision was in error because: (1) the ALJ gave insufficient weight to the opinions of the treating neurologist; and (2) the ALJ improperly discredited Plaintiff.

A. **Treating Physician**

In evaluating a claim of disability, an ALJ "must consider all medical opinions in the record." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(b). The opinion of a treating physician is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because of a treating doctor's "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer 'good reasons' for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see Stage v. Colvin,* 812 F.3d 1121, 1126 (7th Cir. 2016). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Campbell,* 627 F.3d at 306.

Even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740;

12

*Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ gave insufficient reasons to reject the opinion of Dr. McCoyd, Plaintiff's neurologist. The ALJ found that Dr. McCoyd, although a treating physician, was "not entitled to controlling or even significant weight" because his medical source statements are "inconsistent" with his own treatment notes. (R. 27.) However, the ALJ failed to explain *how* Dr. McCoyd's opinion was inconsistent with his treatment notes or to point to any inconsistencies directly. *See Clifford v. Apfel*, 227 F. 3d 863, 871 (7th Cir. 2000) (finding that the ALJ did not provide any explanation for his belief that the plaintiff's activities were inconsistent with the treating physician's opinion and his failure to do so constitutes error). Without such a logical bridge, the Court cannot trace the path of the ALJ's reasoning.

Further, it is well-established that "[a]n ALJ may not selectively consider medical reports, especially those of treating physicians." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2011). "[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Scrogham v. Colvin,* 765 F.3d 685,

698 (7th Cir. 2014) citing *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982). The ALJ failed to discuss the treatment notes and test results that were supportive of Dr. McCloyd's opinion. For instance, on April 15, 2013, Dr. McCoyd found that Plaintiff had mild attention tremor on the left with finger-to-nose testing, mild sway, and an inability to tandem walk; Dr. McCloyd also noted MRI results from the same date that showed at least one new brainstem lesion and a prominent new right periventrical lesion. (R. 399-400.) By failing to address the supportive evidence in Dr. McCloyd's treatment notes, the Court cannot determine whether the ALJ considered this evidence in making her determination.

Although the ALJ is entitled to not give Dr. McCoyd's opinion controlling weight, she still must address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinion. SSR 96-2p. SSR 92-2p states that treating source medical opinions like Dr. McCoyd's "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*) The ALJ failed to minimally address many of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of the treatment relationship, the frequency of examination, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. McCoyd had a relevant specialty.

The Commissioner concedes that the ALJ did not discuss all of the factors in 20 C.F.R. § 404.1527, but argues that the Seventh Circuit has held that specifically addressing all of the factors is not necessary, citing *Henke v. Astrue*, 498 Fed.App'x.

14

636, 641 (7th Cir.2012) (unpublished decision). Indeed, there is a division in Seventh Circuit cases as to whether the ALJ must explicitly weigh each factor. *See Outley v. Colvin*, No. 15 C 7817, 2016 WL 4530315, at *14 (N.D. Ill. Aug. 30, 2016); *Duran v. Colvin*, No. 13 C 50316, 2015 WL 4640877, at *10 (Aug. 4, 2015). However, even under the more forgiving line of cases, the ALJ must "sufficiently account[ ] for the factors in 20 C.F.R. 404.1527." *Schreiber v. Colvin*, 519 Fed. App'x. 951, 959 (7th Cir. 2013) (unpublished decision). As explained above, the ALJ did not do so here, preventing this Court from assessing the reasonableness of the ALJ's decision in light of the factors indicated in 20 C.F.R. § 404.1527. The ALJ did not offer substantial evidence for rejecting Dr. McCoyd's opinion, which is an error requiring remand.

### B. Other Matters Raised by Plaintiff

Because remand is required for the above reasons, the Court need not explore in detail at this time the remaining errors asserted by Plaintiff. The Court does note that, since the ALJ rendered her decision in this case, the Social Security Administration has issued new guidance on how it assesses the effects of a plaintiff's claimed symptoms. Prior policy ruling SSR 96-7p, which focused on credibility, has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. As SSR 16-3p is simply a clarification the Administration's interpretation of the existing law, rather than a change to it, the same regulatory factors for evaluating the severity of Plaintiff's symptoms will

apply. *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016). On remand, the ALJ should take care to assess the intensity and persistence of Plaintiff's symptoms in accordance with the guidelines of SSR 16-3p.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 18] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 26] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**          **ENTERED:**

*Maria Valdez* (signature)

**DATE:**    **February 27, 2017**         _____
                                                     **HON. MARIA VALDEZ**
                                                     **United States Magistrate Judge**